UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

-------------------------------------------------------------

Winmark Capital Corporation,                    Case No. _____
a Minnesota corporation,

                Plaintiff,

vs.                                                              **COMPLAINT**

ThreatMetrix, Inc., a Delaware corporation,

                Defendant.

-------------------------------------------------------------

For its Complaint, plaintiff Winmark Capital Corporation states the following:

## **INTRODUCTION**

1.     This is an action by a lessor against a lessee to collect amounts due the lessor as a result of the lessees' default under the lease.

## **PARTIES**

2.     Plaintiff Winmark Capital Corporation ("Winmark") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, County of Hennepin.  Winmark is engaged in the business of leasing computer and other electronic equipment to sophisticated corporate lessees such as defendant.

3.     Upon information and belief, Defendant ThreatMetrix, Inc. ("ThreatMetrix") is a Delaware corporation with its principal place of business in San Jose, California.

## JURISDICTION AND VENUE

4.      Jurisdiction is appropriate in this court pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, and the defendant has consented to jurisdiction and venue in Minnesota.

## FACTS

5.      Winmark and ThreatMetrix entered into a Lease Agreement dated July 6, 2016, identified as Lease No. TH070616 (the "Lease Agreement").  A copy of the Lease Agreement is attached hereto as Exhibit A.

6.      Pursuant to the Lease Agreement, Winmark purchased various items of equipment and leased the equipment to ThreatMetrix (the "Equipment").  Equipment leased to ThreatMetrix is set forth on Lease Schedules that are specifically incorporated into the Lease Agreement.

7.      In July 2016, Winmark and ThreatMetrix entered into Lease Schedule No. 001.  A copy of Lease Schedule No. 001 is attached hereto as Exhibit B.   Pursuant to Lease Schedule No. 001 ThreatMetrix leased "[s]ervers, storage and network equipment."  The Lease Term for Lease Schedule No. 001 was 36 months following commencement and the Monthly Lease Charge was $61,825.  The "Anticipated Delivery and Installation" was "July through September 2016."

8.      In October 2016, Winmark and ThreatMetrix entered into Rider No. 001 to Lease Schedule No. 001.  A copy of Rider No. 001 to Lease Schedule No. 001 is attached

hereto as Exhibit C.   Rider No. 001 provides that certain soft costs, e.g., software, installation and support, are included as part of the equipment in Lease Schedule No. 001.

9.      In October 2016, Winmark and ThreatMetrix entered into Amendment 1 to Lease Schedule No. 001.  A copy of Amendment 1 to Lease Schedule No. 001 is attached as Exhibit D.  Amendment 1 provides that the Monthly Lease Charge is increased to $92,738.00 and that the "total cost of Equipment shall not exceed $3,000,000.00 without a further amendment to Lease Schedule No. 001."

10.      In December 2016, Winmark and ThreatMetrix entered into Lease Schedule No. 001R, which replaced Lease Schedule No. 001.  A copy of Lease Schedule No. 001R is attached hereto as Exhibit E.   Pursuant to Lease Schedule No. 001R, ThreatMetrix leased the Equipment set forth on Attachment A thereto.  The Lease Term for Lease Schedule No. 001R was 36 months and the Monthly Lease Charge was $84,339.00.  The "Anticipated Delivery and Installation" was "July through November 2016."

11.      The last piece of Equipment leased under Lease Schedule No. 001R was delivered and installed on November 18, 2016.  Under the terms of the Lease Agreement, paragraph 2, the Commencement Date for Lease Schedule No. 001R was December 1, 2016, i.e., "the first of the month following installation of all the Equipment on the Lease Schedule."

12.      In December 2016, ThreatMetrix and Winmark entered into Lease Schedule 002 pursuant to which ThreatMetrix agreed to lease "servers, storage and network equipment [and] [s]oftware."  The lease term was 36 months from

Commencement.  The monthly lease charge was $92,738.  The "[a]nticipated delivery and installation" was "January through June 2017."  A copy of Lease Schedule No. 002 is attached hereto as Exhibit F.

13.     In December 2016, Winmark and ThreatMetrix entered into Rider No. 001 to Lease Schedule No. 002, which acknowledged the inclusion of certain "soft costs" into Lease Schedule No. 002 and provided for the transfer of certain licenses to Winmark at the end of the lease term.  Rider No. 001 also states that:

> Lessee acknowledges and understands that all of the remaining equipment associated with Lease Schedule No. 002 will be only computer hardware, will be installed in the United States, and Lease Schedule No. 002 will commence only after all equipment (total cost of $3,000,000) is installed and accepted on this Lease Schedule No. 002, unless agreed to otherwise in writing by both Lessor and Lessee, or Lessor elects to stop purchasing equipment associated with this Lease Schedule No. 002 pursuant to paragraph 26 of the Lease Agreement.

A copy of Rider No. 001 is attached hereto as Exhibit G.

14.     In January 2017, Winmark and ThreatMetrix entered into Rider No. 002 to Lease Schedule No. 002, which acknowledged the inclusion of certain "soft costs" into Lease Schedule No. 002 and provided for the transfer of certain licenses to Winmark at the end of the lease term.   Rider No. 002 also states that:

> Lessee acknowledges and understands that all of the remaining equipment associated with Lease Schedule No. 002 will be only computer hardware, will be installed in the United States, and Lease Schedule No. 002 will commence only after all equipment (total cost of $3,000,000) is installed and accepted on this Lease Schedule No. 002, unless agreed to otherwise in writing by both Lessor and Lessee, or Lessor elects to stop purchasing equipment associated with this Lease Schedule No. 002 pursuant to paragraph 26 of the Lease Agreement.

A copy of Rider No. 002 is attached hereto as Exhibit H.

15.     In February 2017, Winmark and ThreatMetrix entered into Rider No. 003 to Lease Schedule No. 002, which acknowledged the inclusion of certain "soft costs" into Lease Schedule No. 002 and provided for the transfer of certain licenses to Winmark at the end of the lease term.   Rider No. 003 also states that:

> Lessee acknowledges and understands that all of the remaining equipment associated with Lease Schedule No. 002 will be only computer hardware, will be installed in the United States, and Lease Schedule No. 002 will commence only after all equipment (total cost of $3,000,000) is installed and accepted on this Lease Schedule No. 002, unless agreed to otherwise in writing by both Lessor and Lessee, or Lessor elects to stop purchasing equipment associated with this Lease Schedule No. 002 pursuant to paragraph 26 of the Lease Agreement.

A copy of Rider No. 003 is attached hereto as Exhibit I.

16.     In February 2017, Winmark and ThreatMetrix executed Amendment No. 1 to Lease Schedule No. 002.  Amendment No. 1 provides that the monthly lease charge for Lease Schedule No. 002 increased to $154,563.  Amendment No. 1 also states that "[t]he total cost of Equipment shall not exceed $5,000,000.00 without a further amendment to Lease Schedule No. 002."  A copy of Amendment No. 1 to Lease Schedule No. 002 is attached hereto as Exhibit J.

17.     In April 2017, Winmark and ThreatMetrix entered into Rider No. 004 to Lease Schedule No. 002, which acknowledged the inclusion of certain "soft costs" into Lease Schedule No. 002 and provided for the transfer of certain licenses to Winmark at the end of the lease term.   Rider No. 004 also states that:

> Lessee acknowledges and understands that all of the remaining equipment associated with Lease Schedule No. 002 will be only computer hardware, will be installed in the United States, and Lease Schedule No. 002 will commence only after all equipment (total cost of $5,000,000) is installed

and accepted on this Lease Schedule No. 002, unless agreed to otherwise in writing by both Lessor and Lessee, or Lessor elects to stop purchasing equipment associated with this Lease Schedule No. 002 pursuant to paragraph 26 of the Lease Agreement.

A copy of Rider No. 004 is attached hereto as Exhibit K.

18.    Certain equipment leased under Lease Schedule No. 002 was delivered to and accepted by ThreatMetrix between December 27, 2016 and December 4, 2017.  But other equipment remains to be selected, delivered and installed.

19.    ThreatMetrix agreed that it would lease equipment with a total cost of $5,000,000 under Lease Schedule No. 002.  But ThreatMetrix has refused to do so to date.

20.    Paragraph 16 (2) of the Lease Agreement provides that:

The occurrence of any of the following events shall constitute an Event of Default under this Lease Agreement and/or any Lease Schedule:
. . .
(2) the failure of Lessee to perform any other term, covenant or condition of this Lease Agreement, any Lease Schedule or any other document, agreement or instrument executed pursuant to hereto or in connection herewith, which is not cured within ten (10) days after written notice thereof from Lessor.

21.    In July 2018, counsel for Winmark sent notice to ThreatMetrix that it had not fulfilled its obligation to lease equipment under Lease Schedule No. 002 as required.

22.    ThreatMetrix did not cure its default and has not leased any further equipment under Lease Schedule No. 002.

23.    In February 2018, ThreatMetrix provided notice to Winmark that it had entered into an Agreement and Plan of Merger with RELX Inc., and that as a result of

that transaction, ThreatMetrix became a wholly-owned subsidiary of RELX Inc.  Upon

information and belief, RELX Group, the parent company of LexisNexis Risk Solutions,

closed the acquisition of ThreatMetrix sometime in 2018.

24.     Paragraph 17 of the Lease Agreement provides that:

> In the event that there is an acquisition by any individual, entity or group of
> beneficial ownership of 51% or more of either (i) the then-outstanding
> ownership interests of Lessee or (ii) the combined voting power of the then-
> outstanding voting interests of Lessee entitled to vote generally in the
> election of directors or managers, Lessor may require, subsequent to such
> acquisition, that Lessee pay in advance the total remaining Lease Charges
> due through the end of the current lease term associated with each Lease
> Schedule (using a discount rate of four (4%) percent).
> In the event that there is a reorganization, merger, or consolidation or sale
> or other disposition of all or substantially all of the assets of Lessee, Lessor
> may require, subsequent to such event, that Lessee pay in advance the total
> remaining Lease Charges due through the end of the current lease term
> associated with each Lease Schedule (using a discount rate of four (4%)
> percent).

25.     In October 2018, Winmark informed ThreatMetrix that ThreatMetrix was

required to pay in advance the total remaining Lease Charges due under Lease Schedule

No. 001R.

26.     ThreatMetrix has not paid the total remaining Lease Charges due under

Lease Schedule No. 001R.

27.      By letter dated October 15, 2018, Winmark sent a demand letter indicating

that ThreatMetrix owed Winmark $1,074,815.75 in accelerated lease charges for Lease

Schedule No. 001R, discounted at a rate of 4%, and $36,017.75 for late charges accrued

through August 2018.  To date, ThreatMetrix has not sent any written response to that

demand.

28.   Paragraph 18 of the Lease Agreement provides that:

Should any Event of Default occur, Lessor may, in order to protect its interests and reasonably expected profits, with or without notice or demand upon Lessee, retain any and all security deposits and pursue and enforce, alternatively, successively and/or concurrently, any one or more of the following remedies:

(1) recover from Lessee all accrued and unpaid Lease Charges and other amounts due and owing on the date of the default;

(2) recover from Lessee from time to time all Lease Charges and other amounts as and when becoming due hereunder;

(3) accelerate, cause to become immediately due and recover the present value of all Lease Charges and other amounts due and/or likely to become due hereunder from the date of the default to the end of the lease term using a discount rate of four (4%) percent;

(4) cause to become immediately due and recover from Lessee the Casualty Loss Value of the Equipment which Lessee agrees is not a penalty but rather the fair measure of Lessor's loss in or damage to Lessor's interests in the Equipment and Lease caused by Lessee's default hereunder;
. . . .

(8) proceed by court action to enforce performance by Lessee of its obligations associated with any Lease Schedule and/or this Lease Agreement; and/or

(9) pursue any other remedy Lessor may otherwise have, at law, equity or under any statute, and recover damages and expenses (including attorneys' fees) incurred by Lessor by reason of the Event of Default.

29.   Pursuant to Lease Schedules Nos. 001R and 002, if there is an Event of

Default, Winmark is also entitled to retain any and all security deposits.

30.   Paragraph 19 of the Lease Agreement provides that:

In the event of any default, claim, proceeding, including a bankruptcy proceeding, arbitration, mediation, counter-claim, action (whether legal or equitable), appeal or otherwise, whether initiated by Lessor or Lessee (or a debtor-in-possession or bankruptcy trustee), which arises out of, under, or is related in any way to this Lease Agreement, any Lease Schedule, or any other document, agreement or instrument executed pursuant hereto or in connection herewith, or any governmental examination or investigation of Lessee which requires Lessor's participation (individually and collectively, the "Claim"), Lessee, in addition to all other sums which Lessee may be called upon to pay under the provisions of this Lease Agreement, shall pay to Lessor, on demand, all costs, expenses and fees paid or payable in connection with the Claim, including, but not limited to, attorneys' fees and out-of-pocket costs, including travel and related expenses incurred by Lessor or its attorneys.

## COUNT I
### (Breach of Contract)

31.   Winmark restates and realleges the allegations contained in paragraphs 1 through 29 above as though fully set forth herein.

32.   Winmark and ThreatMetrix entered into a Lease Agreement dated July 6, 2016.

33.   Winmark and ThreatMetrix entered into Lease Schedule Nos. 001, 001R and 002 pursuant to the Lease Agreement.

34.   ThreatMetrix have caused Events of Default under the Lease Agreement and Lease Schedules by, among other things, failing to lease all equipment it was required to lease under Lease Schedule No. 002, and by failing to pay in advance the remaining Lease Charges under Lease Schedule No. 001R as demanded by Lessor.

35.     Pursuant to paragraph 18 of the Lease Agreement, Winmark is entitled to recover from the Lessee, among other things, all accrued and unpaid lease charges, all lease charges and other amounts as and when they become due, and is also entitled to accelerate and cause to become immediately due and payable the present value of all lease charges and other amounts due and/or likely to become due under the Lease Agreement and is entitled to return of the Equipment.  In addition, the Lease Agreement provides for an award to Winmark of its costs, expenses and attorneys' fees.

36.     The Lessee's breach of the Lease Agreement and Lease Schedules has caused Winmark to suffer damages in an amount in excess of $75,000, to be proven at trial, and Winmark is entitled to pursue all remedies available to Winmark under the Lease, at law, equity or under any statute.

## COUNT II
### (Specific Performance)

37.     Winmark restates and realleges the allegations contained in paragraphs 1 through 35 above as though fully set forth herein.

38.     Under the terms of paragraph 18 (8) of the Lease Agreement, Winmark is entitled to enforce performance of ThreatMetrix's obligations under the Lease Agreement and Lease Schedule No. 002.

39.     ThreatMetrix has refused to lease all the equipment it was required to lease under Lease Schedule No. 002 despite Winmark's demand.

40.     Winmark requests that the Court enter an order requiring ThreatMetrix to perform as required under Lease Schedule No. 002, including leasing the remaining equipment it was required to lease under Lease Schedule No. 002.

WHEREFORE, plaintiff Winmark requests the following relief:

1.     Ordering ThreatMetrix to pay Winmark for all of its damages;

2.     Judgment in an amount greater than $75,000;

3.     Judgment for the costs, expenses and attorneys' fees incurred by Winmark in this action;

4.     An Order requiring ThreatMetrix to perform as required under Lease Schedule No. 002 and lease the remaining equipment it was required to lease under Lease Schedule No. 002; and

5.     Such other and further relief as the Court deems appropriate


Dated: November 9, 2018               BERENS & MILLER, P.A.

                                      s/Barbara Podlucky Berens
                                      Barbara Podlucky Berens #209788
                                      Erin K. Fogarty Lisle #238168
                                      3720 IDS Center
                                      80 South Eighth Street
                                      Minneapolis, Minnesota 55402
                                      (612) 349-6171

                                      *Attorneys for Plaintiff*
                                      *Winmark Capital Corporation*